IRONDALE BANK, A Missouri
Banking Corp., Plaintiff,

v.

Tenna Bell CROCKER,
Defendant/Appellant,

and

Willard Rieffer, Personal Representative
of the Estate of Leva Getty,
Defendant/Respondent.

No. 68125.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 9, 1996.

Jack L. Duncan, Park Hills, for Appellant.

Donald A. Hale, Steelville, for Respondent.

PUDLOWSKI, Judge.

This is an appeal from a judgment entered in an interpleader action filed by Irondale Bank (Bank) to determine the rights of two claimants to funds held by Bank in four Certificate of Deposit (CD) accounts. Respondent is the personal representative of the Estate of Leva Getty, and appellant is Tenna Bell Crocker, Getty's niece. The trial court held that because the joint tenancy in the CDs, which at one time existed between Getty and appellant, has been dissolved, respondent is the rightful owner of the CDs; we now affirm.

We review the trial court's decision under the standards enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). As such, we accept as true the trial court's findings of fact, and we credit the evidence in the record which otherwise supports the trial court's ruling. An affirmance is appropriate unless the ruling of the trial court is unsupported by substantial evidence, is clearly against the weight of the evidence, or erroneously applies or declares the law. *Id.* at 32.

The facts of this case are largely undisputed. Getty purchased four CDs from Irondale Bank in 1983, and on January 27, 1986 she added appellant's name to these CDs; the parties agree that in so doing, a joint tenancy was created wherein the survivor of the two tenants succeeded to sole ownership of the CDs upon the death of the other tenant. *See* RSMo § 369.470 and *In re Estate of LaGarce*, 487 S.W.2d 493 (Mo. banc 1972) (holding that the formalities normally attending the creation of a joint tenancy do not apply to a "statutory joint tenancy", or a joint tenancy account). Getty was the sole depositor of the money in the CD accounts, and as such, it is undisputed that she retained the right to terminate the joint tenancy and cancel appellant's interest therein.

*Estate of Munier by Garger v. Jacquemin,* 899 S.W.2d 114, 117 (Mo.App.E.D.1995).

The lone issue raised by this appeal is whether Getty accomplished dissolution of the joint tenancy by her actions during her lifetime. In early 1987, there was a falling out between appellant and Getty. Getty wrote a letter to Bank on March 19, 1987, asking that appellant's name be removed from the CDs and that appellant be divested of her interest in the CDs. Bank's response letter was not introduced at trial; however, it is clear that Bank declined to amend ownership of the CDs absent presentation of the actual certificates.

Getty wrote to Bank again on March 28, renewing her original request and asking that the CD accounts be "frozen" so as to be payable to Getty or her estate only. She also included an affidavit wherein she stated that she did not have possession of the actual certificates and did not know their whereabouts. The record indicates that in 1985 Bank had re-issued certificates to Getty upon presentation of an "affidavit of lost CD" averring that Getty neither had the certificates nor knew where they were. The record reveals no further correspondence on the matter between Getty and Bank, although Getty's letter and affidavit did prompt Jack Davis, an attorney for Bank, to ask appellant for return of the certificates. Appellant did not comply with his request.

From March 1987, to Getty's death on February 19, 1994, Getty and appellant did not speak to each other. After Getty's death, appellant attempted to redeem the certificates, which she apparently had held in a safe deposit box since 1986. Rather than honor her request (or that of the personal representative for Getty's estate), Bank filed the instant interpleader action.

■ A certificate of deposit is a contract, and a joint tenancy in a CD is generally created and terminated according to the contractual terms. *Washington County Mercantile Bank v. Kennedy,* 855 S.W.2d 520, 522 (Mo.App.E.D.1993). In this case, Bank's policy with regard to the addition or elimination of a party to a CD was that the actual certificates had to be presented to Bank in order for either to occur. Appellant argues

that because Getty never tendered the certificates to Bank, the joint tenancy between Getty and appellant was never severed and, thus, appellant succeeds to sole ownership of the CDs by right of survivorship.

■ However, as this court has recognized, this general principle can lead to distinctly unsatisfying results in a situation where the joint tenant who has deposited all of the funds in the account is thwarted in her efforts to terminate the joint tenancy merely because she does not have possession of the certificates. Such was the situation in *Estate of Munier,* where we weighed the considerations thusly:

> If we were to affirm [the ruling that the joint tenancy continued until depositor's death], defendants would be rewarded for their wrongful withholding of the certificates. [The depositing tenant] was entitled to the certificates. Further, by affirming, we would be sending a message to others like defendants that they should refuse, stall, and delay in the hope that the real owner's death will reward them financially. This we cannot do.

*Estate of Munier* at 117.

Appellant takes the position that a depositing joint tenant's intention to dissolve a joint tenancy is of no consequence unless that intention is accompanied by acts sufficient to accomplish dissolution. This formulation of the problem seems to beg the question. In all of the cases that involve a depositing joint tenant's efforts to dissolve a joint tenancy, the intent to dissolve is only apparent because of some act or acts expressing that intention. Thus, the real inquiry is, "Are the acts sufficiently probative of an intent to dissolve for the court to find dissolution?" This was the unspoken assumption underlying *Estate of Munier.*

Appellant recognizes the prominence of *Estate of Munier* in this appeal, but asserts that because the depositing joint tenant in that case took steps which Getty failed to take, it is not controlling. Specifically, appellant points out that Getty never directly asked appellant for the certificates, and never filed suit against appellant to secure their return. But viewing the facts in the light

most favorable to the trial court's ruling, there are good reasons why Getty did not do these things. According to the affidavit which Getty submitted to Bank, on March 28, 1987, Getty did not know where the certificates were. Thus, she did not know who to ask for the certificates, or who to sue to secure their return.

It is also true, as appellant points out, that Getty's efforts to regain the certificates ceased some seven years before her death, unlike the depositing tenant in *Estate of Munier*, whose efforts to dissolve the joint tenancy persisted until her death. But again, Getty's conduct in this regard does nothing to undermine the conclusion that she wanted to terminate the joint tenancy, in light of the facts of this case. In 1985, Getty had successfully obtained the re-issuance of certificates that had been lost by submitting an affidavit of lost CD. In the instant situation she again submitted an affidavit, at the instruction of Bank's attorney, stating that she did not know where the certificates were. Getty had no further contact with Bank after submitting this affidavit (along with her request that appellant be divested of ownership in the CDs); the evidence supports a finding that Getty believed she had successfully ended the joint tenancy, and that nothing further needed to be done.

Appellant also cites *Kennedy* and *Bowers v. Jones*, 841 S.W.2d 744 (Mo.App.S.D.1992) in support of her argument that Getty's actions were insufficient to sever the joint tenancy. We acknowledge that if *Kennedy* and *Bowers* were the only relevant precedents, a reversal would be in order; but because we believe *Estate of Munier* augurs a new direction in this area, we decline to follow those cases. Our reasoning springs from our recognition of "the testamentary nature of the statutory joint tenancy." *Bowers* at 748. In keeping with the modern trend in the adjudication of testamentary disputes, we believe:

> the finding of a formal defect [in a document affecting testamentary disposition] should not lead to automatic invalidity [of that document], but to a further inquiry: does the noncomplying document express the decedent's testamentary intent....

Professor John Langbein, "Substantial Compliance With the Wills Act," 88 Harv.L.Rev. 489 (1975). Thus, although the letters and the affidavit which Getty furnished to Bank were not in strict compliance with the method of dissolution prescribed in the CDs themselves, we have no trouble concluding the trial court did not err in finding this case sufficiently expressed her intent to dissolve the joint tenancy with appellant.

The trial court's judgment that the CDs should be distributed to Getty's heirs through her probate estate is affirmed.

AHRENS, P.J., and GRIMM, J., concur.